**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DANIEL BRADY,**

                **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-CV-1060-ORL-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

**ORDER**

This cause came on for consideration without oral argument[1] on the Complaint filed by Daniel Brady, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 11-13. Pursuant to the consent of the parties, this matter has been referred to me for disposition under 28 U.S.C. § 636(c). Doc. Nos. 15, 16.

**I.    PROCEDURAL HISTORY.**

In January 2003, Brady applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*., and

---

[1] While counsel for plaintiff indicated that oral argument was not waived, doc. no. 21 at 1, no motion requesting an oral argument was filed. *See* Doc. No. 14 at 4 ("Oral argument may be requested by separate motion.").

under the Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq*., (sometimes referred to herein as the Act).  R. 67-69, 479-82.[2]  He alleged that he became disabled on July 1, 2000.  *Id*.  Brady's applications were denied initially and on reconsideration.  R. 49-51, 483-92.

Brady made a timely request for a hearing before an administrative law judge (ALJ).  R. 64.  An ALJ held a hearing on July 13, 2003.  Brady, represented by an attorney, testified at the hearing. R. 496-514.

After considering the testimony and the medical evidence presented, the ALJ found that Brady had not engaged in substantial gainful activity since the alleged onset date of his disability. R. 388.  The ALJ concluded that the medical evidence showed that Brady had degenerative disc disease, which was a severe impairment, but which did not meet or equal any listed impairment.  R. 383.  Even though there was medical evidence that Brady had mental impairments, the ALJ did not address whether Brady would have nonexertional functional limitations arising from these impairments. *See* R. 385.

The ALJ found that Brady had the residual functional capacity (RFC) to perform sedentary work.  R. 386.  He concluded that Brady could not return to his past relevant work because it exceeded this RFC.  R. 386.  Relying exclusively on the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt P, App. 2, the ALJ concluded

---

[2] Brady had previously been awarded disability, but his disability benefits ended as of June 2000.  Accordingly, the present applications will be evaluated under the legal standard applicable to new applications, rather than under the cessation of disability legal standard.

that Brady could perform jobs that were available in the national economy. R. 386-87. Therefore, the ALJ concluded that Brady was not disabled. R. 387.

Brady requested review of the ALJ's decision. R. 396. The Appeals Council granted the request for review. R. 404-06. It found, among other things, that "[t]he medical evidence shows that the claimant has severe mental impairments," which were not appropriately evaluated by the ALJ. R. 404. Accordingly, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ to do the following:

- Obtain additional evidence concerning the claimant's mental impairments . . . [which] will include a consultative mental status examination and medical source statements about what the claimant can still do despite the impairments.

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas . . . .

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue . . . . In so doing, evaluate the non-examining source opinion . . . and explain the weight given to such opinion evidence.

- Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rule 83-14). . . .

R. 405.

The same ALJ held a supplemental hearing at which Brady and his mother testified. The ALJ did not call a vocational expert (VE) to testify. R. 515-41. Following the conclusion of the hearing, the ALJ referred Brady for evaluation by Sherri M. Yoder, B.A., working with Barbara M. Paulillo, Psy.D. R. 458-65; *see also* R. 540-41.

Testing administered by Ms. Yoder resulted in very low scores regarding Brady's ability to remember information, but the Test of Memory Malingering indicated that Brady was exaggerating his memory impairment. R. 464. Ms. Yoder's diagnoses were as follows: dysthymic disorder; polysubstance dependence, in remission; and personality disorder, not otherwise specified. Ms. Yoder determined that Brady's then current global assessment of functioning (GAF) score was 40, indicating that Brady had major impairments in several functional areas.[3] R. 465. In a functional capacity assessment, Ms. Yoder indicated that Brady would have no limitation in understanding, remembering and carrying out instructions. R. 466. However, he would have moderate limitations in interacting appropriately with the public, supervisors and co-workers, and in responding appropriately to work pressures in a usual work setting, with only mild limitations in responding appropriately to changes in a routine work setting. R. 467.

After reassessing the evidence, the ALJ again concluded that Brady did not have a severe mental impairment. He accepted Ms. Yoder's assessment that Brady would not have limitations in understanding, following and carrying out detailed instructions. However, he rejected her assessment that Brady would have moderate limitations in responding appropriately to the public, supervisors and co-workers and to work pressures. R. 549-50. In reaching this conclusion, he did not address Ms. Yoder's

---

[3] The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. A score between 31 and 40 is defined as: "Some impairment in reality testing or communication (eg, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (eg, depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Harold I. Kaplan, M.D. & Benjamin J. Sadock, M.D., Synopsis of Psychiatry* 299 (8th ed. 1998) (hereinafter *Synopsis of Psychiatry*).

determination that Brady's GAF score of 40 reflected major impairments. Rather, the ALJ found that because Brady told Ms. Yoder that he "is able to participate in a billiards league, the undersigned disagrees that he has moderate limitations with social functioning." R. 550.

The ALJ concluded Brady had a herniated disc, which was a severe impairment, but which did not meet or equal a listed impairment. R. 549. He found that Brady had the RFC to perform sedentary work, with no nonexertional limitations. R. 551. Because Brady's past relevant work exceeded this exertional level, the ALJ concluded that Brady could not perform that work. The ALJ relied exclusively on the Grids at step five of the evaluation process to conclude that Brady was not disabled. R. 551-52.

Brady again sought review of the decision by the Appeals Council. R. 19. This time, the Appeals Council found no reason to review the ALJ's decision. R. 11-13. Brady timely sought review of this decision by this Court. Doc. No. 1.

**II.     JURISDICTION.**

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Brady's request for review. *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); 20 C.F.R. §§ 404.981, 416.1481. Therefore, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

**III.    STATEMENT OF FACTS.**

The ALJ's two decisions, coupled with the memoranda of law filed by the parties, adequately review the evidence of record. Accordingly, I will not review it in detail here.

In summary, Brady was born on October 7, 1957, and has a high school education and some subsequent college course work. He suffered multiple facial fractures and a closed head injury during an automobile accident in 1984. MRIs taken in 1991 and 1993 showed bulging and herniated discs in his spine. He frequently complained of radiating back pain and headaches.

Lily Voepel, M.D., a pain management physician, opined in 2002 that Brady had decreased muscle strength in his legs, and low back pain radiating down both legs confirmed by a positive straight-leg raising test. She observed that he walked with an antalgic gait. R. 374. She treated him with pain medication. R. 372-74. In April 2004, Brady indicated that his pain remained at a level eight or nine on a ten-point scale despite the medication. R. 454.

Many treating, consulting and reviewing professionals opined that Brady had mental impairments. Scott Kaplan, Psy.D., noted when examining Brady in July 2001, that "both his mood and affect appeared severely depressed as well as angry," and that "he ha[d] a great deal of anger and [had] difficulty controlling his aggressiveness." R. 280-81. Dr. Kaplan noted that Brady's "social functioning allows him to interact appropriately and communicate effectively with others only when he so chooses." R. 280. Dr. Kaplan concluded that Brady suffered from the following: a major depressive episode, severe; antisocial personality disorder; and, chronic pain syndrome. He indicated that Brady "will experience difficulty dealing with coworkers, interacting with supervisors, [and] dealing with work stress" among other things. R. 281.

Later in 2001, Pamela D. Green, Ph.D., opined after review of Brady's records that he would have moderate limitations in maintaining social functioning, concentration,

persistence and pace, but only mild restrictions of daily living. R. 299.

In November 2001, John H. Mallams, Ph.D., examined Brady at the request of the SSA. Dr. Mallams noted that Brady's "general attitude and demeanor was somewhat angry, negativistic, and guarded." R. 311. Brady did not give maximum effort during psychological testing, making the validity of the test results questionable. R. 312.

On December 21, 2001, Ann J. Adams, Psy.D., prepared a mental functional capacity assessment after review of Brady's records. She concurred with Dr. Green's opinion that Brady would have moderate limitations in maintaining social functioning, concentration, persistence and pace, but only mild restrictions of daily living. R. 323. She concluded that Brady would have marked limitations in the ability to interact appropriately with the general public, and moderate limitations in the ability to do the following: accept instructions and respond appropriately to criticism from supervisors; understand, remember and carry out detailed instructions; and maintain attention and concentration for extended periods. R. 327-28.

R.V. Radin, M.D., evaluated Brady in 2002. Dr. Radin observed that Brady was in pain, but he was courteous and cooperative. His mood and affect were depressed and anxious, and he showed some personality disorder traits. Dr. Radin diagnosed a depressive disorder, generalized anxiety disorder and personality disorder traits, with a GAF score of 60.[4] R. 443. On August 2, 2002, Brady reported that an increase in medication helped him somewhat. He was again courteous and cooperative, and he did

---

[4] A GAF rating between 51 and 60 reflects the following: "Moderate symptoms (eg, flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (eg, few friends, conflicts with peers or coworkers)." *Synopsis of Psychiatry* at 299.

not have "undue anxiety or depression." R. 438. However, Dr. Radin observed on December 6, 2002, that Brady had a moderate level of anxiety. R. 436. During an examination on March 28, 2003, Dr. Radin noted that an "[i]ncrease in depression was evident[,]" and that Brady was "very pessimistic and negative about himself." R. 434. On May 2, 2003, Dr. Radin noted that Brady was moderately depressed and that his anxiety level was high. His diagnoses remained the same, but Dr. Radin did not provide a current GAF score. R. 433. On January 7, 2004, Dr. Radin described Brady as "somewhat intrusive, somewhat inappropriate in comment, [and] irritable . . . [with] an underlying presence of fairly extreme anger . . . ." R. 456. He had impaired judgment and limited insight. *Id.*

As described above, in 2004, Ms. Yoder examined Brady. She described him as sarcastic, and establishing a rapport with him was done only with some strain. R. 458, 462. His attitude was negativistic and defensive, and he appeared overdramatic at times. R. 462. He tended to ramble and have a "flight of ideas." *Id.* He believed that people were out to get him, and admitted suicidal ideation. R. 462. He complained of constant pain, headaches, and difficulty sleeping. R. 459. He reported having panic attacks and irritability. R. 460. He engaged in few social activities, although he was in a billiards league; however, "[h]e reported only superficial relationship with his billiard tournament members." R. 461, 465; *see also* R. 509 (Brady testified that he played pool). The results of some of the psychological tests were invalid, and Ms. Yoder noted that Brady was not putting forth sufficient effort. R. 463-64. The Test of Memory Malingering indicated that Brady was exaggerating his memory impairment, although other tests reflected that Brady's delayed memory capacity had declined since he was

last tested. R. 464.

Ms. Yoder's diagnosis was dysthymic disorder and personality disorder, not otherwise specified, with a then current GAF score of 40. She opined that Brady's judgment was minimal. R. 462. In her medical source statement, she opined that Brady would have moderate limitations in the ability to interact appropriately with the public, supervisors, and coworkers and to respond appropriately to work pressures in a usual setting. He would have slight difficulties in responding appropriately to changes in a routine work setting. She wrote the following in support of these conclusions:

> Mr. Brady reported that he is not a "butt-kisser." He further reported that he is suspicious of others and their motivations. He stated that other people falsely accuse and persecute him. He also stated that people don't know "what [he's] made of." All of the above indicate a moderate impairment in his ability to successfully interact with others.

R. 467.

Brady's mother wrote in June 2001, that Brady's "defensiveness about [his] problems leads to an abrasiveness in dealing with his bosses and co-workers." R. 101. She had to remind Brady of appointments and paid his bills so that he did not lose or forget them. R. 103, 105. Brady also reported that he had lost a job because a supervisor did not like his attitude. R. 248. At the second hearing before the ALJ, Brady's mother testified that when Brady became agitated "it's like a fuse blows in his head and he starts yelling . . . ." R. 539-40.

## IV. STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last

for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210.  The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**V.   ANALYSIS.**

Brady contends that the ALJ erred as a matter of law after remand by failing to follow the Appeals Council's direction that he call a VE to determine whether there was any work that he could perform. He further asserted that the ALJ's decision that he did not have nonexertional functional limitations as a result of pain and mental impairments was not based on the correct legal analysis and is not supported by substantial evidence. He submits that this Court should remand the case to the SSA for an award of benefits. These are the only issues subject to review.[5]

There is no dispute that the ALJ did not call upon a VE to testify on remand. Indeed, the record reflects that the ALJ held the supplemental hearing before he obtained the consultative psychological report that the Appeals Council found was

---

[5] The parties were advised that issues not specifically raised would be waived. Doc. No. 14 at 2.

necessary to evaluate Brady's mental functional capacity. Furthermore, the ALJ did not expressly evaluate the mental functional capacity assessments of the reviewing physicians (non-examining sources) and explain the weight given to these opinions as directed by the Appeals Council.

In his memorandum of law, the Commissioner does not address the failure of the ALJ to comply with the Appeals Council's directives. The social security regulations require that "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b); *cf. Gibbs v. Barnhart*, 130 Fed. Appx. 426, 430 (11th Cir. 2005)(noting that "in order to fully discharge the Appeals Council's mandate," the ALJ was required to take the steps required by the Appeals Council). Failing to abide by the Appeals Council's instructions is reversible error. *See, e.g., Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1375-76 (N.D. Ga. 2006); *see also Allen v. Astrue*, Civil No. 06-cv-018, 2007 WL 1276933, at * 3-4 (E.D. Pa. May 1, 2007); *Hutchison v. Apfel*, No. 2:98-cv-087, 2001 WL 336986, at * 11 (N.D. Tex. March 9, 2001); *Mann v. Chater*, No. 95 CIV 2997 (SS), 1997 WL 363592, at * 3 (S.D.N.Y. June 30, 1997).

The error in this case is not harmless. The Appeals Council wrote in its remand order that the medical evidence established that Brady had severe mental impairments. The treating, consulting and reviewing professionals who rendered an opinion on the functional limitations arising from Brady's mental impairments after the alleged disability onset date concluded that he would experience moderate difficulties in maintaining social functioning, including interacting appropriately with the general public, supervisors

and coworkers.  R. 299 (Dr. Green); R. 323, 327-28 (Dr. Adams); R. 467 (Ms. Yoder); *see also* R. 281 (Dr. Kaplan opined that Brady would experience difficulty dealing with coworkers, supervisors and work stress); R. 311 (Dr. Mallams observed that Brady's general attitude and demeanor was angry and negativistic); R. 456 (Dr. Radin described Brady as having an underlying presence of fairly extreme anger).  These reports were consistent with the testimony of Brady's mother about Brady's problems dealing with supervisors, coworkers and stress.

  The only explicit reason the ALJ gave for rejecting these professionals' assessments regarding Brady's limitations in social functioning was that he participated in a billiards league.  He did not include in his recitation of facts Brady's indication to Ms. Yoder that he had only superficial relationships with his team members.  Furthermore, the ability to act appropriately in isolated social settings is not alone sufficient to provide good cause for rejecting the opinions of every physician who opined about Brady's mental functional limitations.

  Brady argues that when, as here, the ALJ erred as a matter of law, the Court must remand the case for an award of benefits.  A court may order an award of benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  In this case, the record is insufficient to conclude that Brady is disabled without doubt.  Rather, the Commissioner must appropriately evaluate the functional limitations arising from Brady's undisputed mental impairments and call upon a VE to determine whether there is work that Brady

can perform considering his physical and mental limitations.[6]

Accordingly, remand for further proceedings is required. It would be appropriate for the Commissioner to consider assigning this matter to a different ALJ for further evaluation.

## VI.  CONCLUSION.

For the reasons set forth herein, it is **ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings. The Clerk of Court is directed to issue a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** this 26th day of September, 2007.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[6] On remand, the Commissioner should specifically address Ms. Yoder's conclusion that Brady had a GAF score of 40 when she examined him in 2004. While the Commissioner has not endorsed the GAF scale as indicative of functional capacity for purpose of disability determinations, *see Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005), an ALJ is required to determine what, if any, weight to place on the score, *see McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006).